Marc M. Seltzer (54534)
Kathryn P. Hoek (219247)
Oleg Elkhunovich (269238)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
khoek@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Joseph S. Grinstein (*pro hac vice*)
SUSMAN Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 7702-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jgrinstein@susmangodfrey.com

Attorneys for Plaintiff Diamond Coating Technologies, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DIAMOND COATING TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>HYUNDAI MOTOR AMERICA; HYUNDAI MOTOR COMPANY; KIA MOTORS AMERICA, INC.; AND KIA MOTORS CORPORATION.<br><br>Defendants. | Case No. 8:13-cv-01480 MRP (DFMx) |
| DIAMOND COATING TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., AND NISSAN MOTOR CO., LTD<br><br>Defendants, and<br>Third-Party Plaintiffs, and<br><br>FEDERAL-MOGUL CORP., AND KS KOLBENSCHMIDT US, INC.,<br><br>Third-Party Defendants. | Case No. 8:13-cv-01481-MRP (DFMx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION FOR LEAVE TO TAKE DISCOVERY FROM THIRD PARTY SANYO ELECTRIC CO., INC. (now d/b/a PANASONIC CORPORATION) AFTER FACT DISCOVERY CUT-OFF DATE**<br><br>Date: n/a<br>Time: n/a<br>Courtroom: 12<br>Judge: Hon. Mariana Pfaelzer |

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. COUNTER-STATEMENT OF FACTS ........................................................ 3

    A. Defendants Knew Of Sanyo's Relationship To The Patents-in-Suit Since Inception Of This Litigation. ..................................................... 3

    B. Defendants Chose Not To Pursue Formal Discovery From Sanyo And Inventors. ..................................................................................... 4

    C. DCT Attempted To Facilitate Voluntary Depositions Of Sanyo And Inventors in Japan. ........................................................................ 4

III. ARGUMENT .................................................................................................. 6

    A. Defendants' *Ex Parte* Application Is Procedurally Improper Because They Offer No Justification for Failing to File A Regularly-Noticed Motion. .................................................................................................. 6

    B. Defendants Fail To Establish Good Cause For Modifying The Procedural Schedule ............................................................................. 9

    C. Starting Formal International Discovery At This Stage Would Cause Extreme Delay And Be Futile. ............................................................ 11

IV. CONCLUSION ............................................................................................ 13

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

i

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

# TABLE OF AUTHORITIES

**Cases**

*Bakeer v. Nippon Cargo Airlines Co.*,
 2011 WL 3625103 (E.D.N.Y. July 25, 2011) ...................................................... 11

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*,
 482 F.3d 1347 (Fed. Cir. 2007) ............................................................................ 12

*In re Intermagnetics America, Inc.*,
 101 B.R. 191 (C.D.Cal. 1989) ................................................................................ 6

*Jaffe v. Zamora*,
 No. SACV 14-01478-CJC(RNBx),
 2014 WL 5786233 (C.D. Cal. Oct. 29, 2014) ........................................................ 6

*Johnson v. Mammoth Recreations, Inc.*,
 975 F.2d 604 (9th Cir.1992) ................................................................................... 9

*Marmo v. Tyson Fresh Meats, Inc.*,
 457 F.3d 748 ......................................................................................................... 10

*Mission Power Engineering Co. v. Continental Casualty Co.*,
 883 F. Supp. 488 (C.D. Cal. 1995) ................................................................ passim

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*,
 482 U.S. 522 (1987) ........................................................................................ 11, 12

*United States v. Rosen*,
 240 F.R.D. 204 (E.D. Va. 2007) .......................................................................... 11

**Rules**

Fed. R. Civ. P. 16 ......................................................................................................... 9

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

ii

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

Plaintiff Diamond Coating Technologies, LLC ("DCT") opposes Defendants' *ex parte* application for leave to take discovery from third party Sanyo Electric Co., Inc. (now d/b/a Panasonic Corporation) ("Sanyo") after the fact discovery cut-off date as procedurally improper and substantively unwarranted.

## I.   INTRODUCTION

Having sat on their hands throughout fact discovery, Defendants rush into this Court on the discovery cut-off date with a procedurally improper *ex parte* application, purporting to seek "emergency" relief of extending discovery by an unspecified amount of time to seek unnamed and yet-to-be-initiated discovery from Sanyo, a third-party corporation in Japan. Defendants' *ex parte* application should be denied for two independent reasons.

First, Defendants' *ex parte* application is procedurally improper because it fails to comply with procedural requirements for *ex parte* relief and offers no valid justification for Defendants' failing to file a regularly-notice motion. Defendants ignore the filing requirements for *ex parte* applications under *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995), and do not even attempt to show (1) any irreparable prejudice they would suffer if the underlying motion is heard according to the regular noticed motion procedures, and (2) that Defendants are without fault in creating the purported "crisis" that requires *ex parte* relief. *Id.* As explained below, Defendants cannot possibly make such a showing because any claimed urgency is of their own making. Indeed, Defendants met and conferred with DCT about these issues on January 28, 2015—yet they still waited a full four weeks to file this *ex parte* application.

Second, Defendants fail to establish good cause for modifying the Scheduling Order to allow them to take discovery after the cut-off. The gravamen of Defendants' motion is that they should be given an extension of undetermined length to conduct additional discovery because third-party Sanyo and the inventors

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

1

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

of the patents-in-suit—all located in Japan—chose to exercise their right under Japanese law not to voluntarily sit for depositions in these cases. Defendants became aware of the inventors and Sanyo the day these cases were filed on September 23, 2013. DCT further disclosed them in its Rule 26 Initial Disclosures served on March 12, 2014. On that date, DCT also produced to Defendants the Patent Assignment and Transfer Agreement Defendants repeatedly cite in their papers in support of this *ex parte* application. Moreover, at a status conference in this case on February 26, 2014—*precisely one year ago*—Defendants acknowledged that they wanted to conduct international discovery of Sanyo. *See* Declaration of Oleg Elkhunovich ("Elkhunovich Decl."), Ex. 15 [Feb. 26, 2014 Hearing Tr.], at 19 ("MR. PAK: Yes, Your Honor. We anticipate that we may have to take international discovery of the -- the original Assignee [Sanyo], first of all.").

Yet, up until this week, Defendants sat on their proposed "international discovery." Undoubtedly recognizing the difficulties associated with obtaining involuntary discovery from non-parties in Japan, Defendants made a strategic choice not to seek any formal discovery from Sanyo and the inventors, and later sought DCT's assistance in securing the voluntary cooperation of these non-parties. Possibly in part due to Defendants' last minute expansion in scope of sought discovery, Sanyo and the inventors ultimately chose not to provide any voluntary deposition testimony.

Sanyo's decision is at least as regrettable for DCT as it is for Defendants. While Defendants speculate about information Sanyo may or may not have and which may or may not be helpful to their defenses (just like there may be information in Sanyo's possession that may be helpful to DCT's claims), the effect of Sanyo's decision on DCT's case is concrete and immediate: per Defendants' request, DCT agreed it may not call at trial any inventor who is not available for a deposition, meaning that DCT is now unable to present any inventor testimony at trial. Defendants attempt to paint a picture in their application of Sanyo and DCT's

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

2

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

having conspired to shield Sanyo from discovery, but this alleged "shielding" is of no value to DCT. As a consequence of Sanyo's decision to withhold discovery, DCT now has no inventor to "tell the story" of the patents at trial.

Regretful circumstances are not good cause for a do-over in litigation. The parties must now live with the consequences of their strategic decisions. Defendants undoubtedly recognize this, which brings us to the real motivation behind their motion: to delay the schedule the Court has established in this litigation. On September 26, 2014 (the very last day for filing the petitions per 35 U.S.C. § 315(b)), Defendants filed a number of petitions for *inter partes* review of the patents-in-suit with the U.S. Patent and Trademark Office. Defendants are now attempting to use the "urgent" Sanyo discovery situation as a pretext to delay addressing the validity issues in this Court so that their *inter parties* petitions can be resolved first by the USPTO. The Court should not sanction Defendants' attempts to use discovery delays of their own making to delay these cases from progressing as scheduled by the Court.

## II.   COUNTER-STATEMENT OF FACTS

### A.   Defendants Knew Of Sanyo's Relationship To The Patents-in-Suit Since Inception Of This Litigation.

DCT filed these cases on September 23, 2013. Nissan Dkt. 1; Hyundai Dkt. 1.[1] The patents-in-suit, attached to the Complaints, list the inventors and the original assignee Sanyo on their face. On the same date, DCT also filed the Certifications and Notices of Interested Parties, listing Sanyo as the assignor of the patents-in-suit. Nissan Dkt. 2; Hyundai Dkt. 2. On March 12, 2014, DCT served Defendants its Initial Disclosures, which listed the inventors of the patents-in-suit with their business addresses in Japan as individuals likely to have discoverable

---

[1] References to "Nissan Dkt." and "Hyundai Dkt." are to the docket entries in *Diamond Coating Technologies, LLC v. Nissan North America, Inc. and Nissan Motor Co., Ltd.*, Case No. 8:13-cv-01481 MRP (DFMx) and *Diamond Coating Technologies, LLC v. Hyundai Motor America, et al.*, Case No. 8:13-cv-01480 MRP (DFMx), respectively.

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

3

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

information. Elkhunovich Decl. ¶ 4, Ex. 16 at 2–3. DCT also listed Sanyo as an entity likely to have discoverable information. *Id.* On the same date, DCT made its initial production of documents to Defendants, which included Patent Assignment and Transfer Agreement between Sanyo and DCT. Elkhunovich Decl. ¶ 3. And, even before service of these disclosures, Defendants acknowledged in open court that they would want to take international discovery of Sanyo. Elkhunovich Decl., Ex. 15 [Feb. 26, 2014 Hearing Tr.].

### B. Defendants Chose Not To Pursue Formal Discovery From Sanyo And Inventors.

Pursuant to the Discovery and Initial Scheduling Order, Nissan Dkt. 54; Hyundai Dkt. 35, fact discovery for issues of infringement and invalidity opened on August 25, 2014—the day the Court issued its Claim Construction Order, Nissan Dkt. 104; Hyundai Dkt. 66. Between then and the fact discovery cut-off on February 23, 2014, Defendants did not seek any formal discovery from Sanyo or the inventors. Elkhunovich Decl. ¶ 5. Moreover, the difficulties of obtaining international discovery, especially from Japan, are well known. In light of this Court's stated desire to move this case quickly through the discovery phase, Defendants were well advised, even before the commencement of formal discovery, to initiate the international discovery they told this Court in February 2014 that they wanted to take. They chose not to do so, however.

### C. DCT Attempted To Facilitate Voluntary Depositions Of Sanyo And Inventors in Japan.

In early November 2014, nearly three months after the commencement of fact discovery, Defendants initiated discussions about obtaining voluntary depositions from the inventors. Declaration of James Pak (Pak Decl.), Ex. 25. DCT agreed to make a request for Sanyo to make the inventors available for depositions.[2] In response, Sanyo indicated it was willing to voluntarily provide two

---

[2] Defendants could have made this request themselves. As they acknowledge in

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

4

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

of the inventors for a deposition. Elkhunovich Decl. ¶ 6. DCT and Defendants began to jointly work on making arrangements for depositions in Japan during the week of February 2–6, 2015, which required reservations of rooms at the United States Consulate in Osaka and issuance of Commissions from this Court. *See* Pak Decl., Exs. 26–31; Nissan Dkt. 126, 128; Hyundai Dkt. 79, 81.

On November 20, 2014, Defendants proposed to take depositions of two inventors—Hitoshi Hirano and Yoichi Domoto—and a 30(b)(6) corporate representative of Sanyo generally on topics related to Sanyo's transfer of the patents-in-suit to DCT and agreements and correspondence related to that transfer. Pak Decl. Ex. 29. Sanyo then communicated that Mr. Hirano did not agree to testify, but Mr. Domoto and another inventor, Keiichi Kuramoto, would do so.[3] Sanyo also agreed to provide a corporate representative, and so on December 17, 2014, DCT requested a list of specific topics on which Defendants wanted testimony. Elkhunovich Decl., Ex. 1. Having heard nothing in response for three weeks, on January 8, 2015, DCT reminded Defendants to provide a list of such topics. Pak Decl., Ex. 33.

On January 9, 2015, Defendants finally specified their discovery requests, but in doing so dramatically expanded what they have asked for beyond what Sanyo had agreed to provide. *Id.*, Exs. 2–13. For example, even though Sanyo only consented to present Messrs. Domoto and Kuramoto for depositions, Defendants insisted anyway on serving a subpoena for Mr. Hirano as well. Likewise, even though Sanyo had agreed to provide a corporate witness limited to the topic of the transfer of its patent rights to DCT, Defendants instead issued a 30(b)(6) notice that covered nearly every conceivable topic in this litigation. *See* Elkhunovich Decl.,

---

(… cont'd)
their application, Defendants are also in direct contact with Sanyo/Panasonic. Application, at 7 ("Between January 20, 2015, and January 26, 2015, *Defendants and DCT urged Sanyo to reconsider* . . . .") (emphasis added).
[3] Again, under Japanese law, a Japanese citizen cannot be compelled to provide a U.S. deposition against her will.

1  Exs. 3 & 9. Defendants also purported to serve a subpoena for documents on
2  Sanyo, which had never been discussed with Sanyo. *Id.*, Exs. 4 & 10. DCT's
3  counsel immediately responded to these papers, reminding Defendants that (1)
4  neither DCT nor counsel had agreed or were authorized to accept service of any
5  subpoenas on behalf of Sanyo; (2) Mr. Hirano did not agree to testify; (3) the
6  deposition topics for Sanyo's corporate representatives included subjects well
7  beyond what was originally requested; and (4) the purported subpoenas for the first
8  time sought production of documents. However, as before, DCT agreed to
9  communicate all requests to Sanyo for its consideration. *Id.*, Ex. 14.
10 Unfortunately, after receiving the new and expanded requests from Defendants,
11 Sanyo informed DCT that it would not provide any witnesses for deposition. Pak
12 Decl. Ex. 35. Despite DCT's (and Defendants') efforts to urge Sanyo to reconsider
13 its position, Sanyo chose to exercise its right not to agree to any voluntary
14 depositions.

15 On January 26, 2015, Defendants initiated a meet and confer, informing DCT
16 of their intention to move to dismiss on the basis of "Sanyo's refusal to provide the
17 defendants discovery" and pursue formal international discovery. Pak Decl. Ex. 37.
18 The parties discussed these issues on January 28, 2015. *Defendants did nothing for*
19 *four weeks* and then filed the instant *ex parte* application (and a separate motion to
20 dismiss) after the discovery cut-off on February 23, 2015.

21 **III.  ARGUMENT**

22    **A.  Defendants' *Ex Parte* Application Is Procedurally Improper
23        Because They Offer No Justification for Failing to File A
          Regularly-Noticed Motion.**
24

25 Because the *ex parte* application is a procedural mechanism that is often
26 misused, courts within this judicial district apply a rigorous burden of proof on a
27 party seeking emergency relief. *Jaffe v. Zamora*, No. SACV 14-01478-CJC(RNBx),
28 2014 WL 5786233, at *1 (C.D. Cal. Oct. 29, 2014) ("*Ex parte* applications call for

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

6

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

emergency relief that is rarely justified."). The "opportunities for legitimate *ex parte* applications are extremely limited." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D.Cal. 1989).

The standards for granting an *ex parte* application are set forth in *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). There, the court held that, as a procedural matter, "[a]n ex parte motion should never be submitted by itself," but rather "must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking." *Id.* "The first part should address only why the regular noticed motion procedures must be bypassed," while "[t]he second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a 'proposed' motion and they show no hearing date.)" *Id.* "*These are separate, distinct elements for presenting an ex parte motion and should never be combined. The parts should be separated physically and submitted as separate documents.*" *Id.* (emphasis in original).

Defendants failed to abide by these procedural requirements, combining their request for *ex parte* relief from the regular motion schedule with their underlying request for relief under Rule 16. In other words, Defendants disregard one set of procedural requirements for *ex parte* applications in requesting that they be permitted to disregard another set of procedural requirements provided in the Scheduling Order. For that reason alone, Defendants' *ex parte* application should be denied.

The likely reason why Defendants failed to file a separate *ex parte* application and request for underlying relief is that they cannot justify why emergency treatment of their request is necessary. The purpose of the first part of an *ex parte* filing described above "is to establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner," which requires the applicant to show why she "should be allowed to go ahead to the

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

7

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

head of the line in front of all other litigants and receive special treatment." *Id.* To meet this burden, the applicant must show (1) that there will be "irreparable prejudice if the underlying motion is heard according to the regular noticed motion procedures," and (2) that the applicant "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.*

Defendants cannot possibly show there will be irreparable prejudice if the underlying motion is heard according to the regular noticed motion procedures. Instead of a proper *ex parte* application, Defendants drop a footnote into their memorandum conclusorily stating that "Defendants have to bring this issue to the Court via the *ex parte* application because the chronology of the events and the timing of Sanyo's cancellation made it impossible to bring a properly met and conferred discovery motion noticed for a hearing before the close of fact discovery under the local rules." Def.'s Memo. at 1 n.1. This is inaccurate. First, Defendants do not explain why they had to bring this motion before the discovery cut off deadline. After all, Defendants via this application seek to alter that deadline. Second, DCT informed Defendants of Sanyo's cancellation on January 19, 2015—35 days before Defendants filed their *ex parte* application. Likewise, the parties met and conferred on this issue on January 28—four weeks before this application was filed. At a minimum it would have been more reasonable for Defendants to seek a reduction of the 10-day meet and confer period requirement under Local Rule 7–3, rather than doing nothing for over a month before filing an *ex parte* application.

Moreover, as described above, the timeline leading up to this motion makes clear that any purported urgency is solely of Defendants' own making. Defendants had at least six months—and more if they had planned appropriately—to seek discovery they have known for a year that they wanted from Sanyo. Yet Defendants served no such discovery and waited until fact discovery period expired

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

8

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

to seek the right to do so.

In short, Defendants have failed to follow the procedural requirements that an *ex parte* application be filed separately from the underlying motion, failed to explain why they did not file a regularly noticed motion, and failed to justify why they should be afforded special treatment over other litigants who have followed the Court's regular motion procedures. As a result, Defendants' *ex parte* application should be denied as procedurally improper.

### B. Defendants Fail To Establish Good Cause For Modifying The Procedural Schedule.

A Rule 16(b) scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). Under Rule 16(b), a district court's scheduling order "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). The focus of Rule 16(b)'s "good cause" standard is the consideration of the party's seeking the amendment diligence. *Johnson*, 975 F.2d at 609. Thus, a court may modify a scheduling order if a deadline "'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed.R.Civ.P. 16 Advisory Comm. Note (1983)). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citation omitted). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

Defendants were not diligent in seeking discovery from Sanyo. Defendants could have initiated formal discovery from Sanyo six months ago, if not sooner. Instead, for nearly half of the discovery period, Defendants did nothing with respect to Sanyo, and then sought to collaborate with DCT to arrange for voluntary

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

9

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

depositions in Japan. This was Defendants' tactical decision. Unfortunately, Defendants overreached by seeking broader discovery than Sanyo agreed to provide, and perhaps as a result the parties ended up with nothing at all. But these strategic decisions and miscalculations do not establish good cause. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759–60 (8th Cir.2006) (holding that "tactical decision[s]" do not provide good cause to modify case management orders).

Even after Defendants learned that Sanyo would not provide voluntary deposition testimony, Defendants waited for over a month and until the last day of discovery to bring this *ex parte* application. Defendants' conduct makes clear they were not diligent in seeking discovery from Sanyo. *See Osakan v. Apple Am. Grp.*, No. 08-4722, 2010 WL 1838701, at *4 (N.D. Cal. 2010) (citing *Claytor v. Computer Assocs. Int'l, Inc.*, 211 F.R.D. 665, 667 (D. Kan. 2003) for the proposition that "plaintiff should have sought assistance from the court earlier than [the discovery cut-off] if he . . . believed that, for whatever reason, he was not going to be able to be able to complete discovery consistent with the discovery deadline").

Defendants attempt to establish diligence by suggesting they initiated discussions about Sanyo near the beginning of the fact discovery period. Defendants state they began discussing the Sanyo depositions on November 6, 2014, which is accurate. Def's Mem. at 10. But in a footnote Defendants then assert: "The Amended Scheduling Order setting dates for the fact discovery period related to infringement and invalidity issues was issued on October 22, 2014 . . . . The discovery prior to that order was limited to the claim construction issues." Def's Mem. at 10 n. 8. The problem is that while the first sentence is correct, the second is not. Claim construction discovery did not extend until October 22, 2014. Fact discovery began the day the Court issued the Claim Construction Order— August 25, 2014. *See* Initial Scheduling Order, Nissan Dkt. 54; Hyundai Dkt. 35. Defendants could have initiated international discovery of Sanyo at least as early as

Plaintiff's Opposition To Defendants' Ex Parte Application For
Leave To Take Discovery From Third Party Sanyo Electric Co.,
Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

10

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

1  August 25, 2014.

2  Defendants cannot rely on the fact that Sanyo initially agreed to provide voluntary discovery to establish diligence. Defendants first discussed the possibility of obtaining voluntary discovery from Sanyo with DCT on November 6, 2014—three months after the start of fact discovery. This was already too late. If Sanyo had refused to provide the inventors for voluntary discovery in November, defendants would not then have been able to complete the letter rogatory process before the close of fact discovery. *See* Jeffrey Soble & Masahiro Tanabe, *Conducting Discovery in Japan: Depositions, Letter Rogatory, and Production of Documents*, Corp. Counselor (Sept. 1, 2012) at 2 (explaining that executing a letter rogatory can take six months in some cases). If the Defendants had acted with diligence, they would have initiated formal discovery from Sanyo even before the start of fact discovery, especially considering that they were planning for this back in February 2014. Furthermore, there is no reason why defendants could not have initiated the letters rogatory process while simultaneously working with DCT to obtain voluntary discovery.

### C. Starting Formal International Discovery At This Stage Would Cause Extreme Delay And Be Futile.

In their Memorandum, Defendants avoid specifying exactly what type of formal discovery they intend to seek from Sanyo or how long of an extension they request. But there are very limited avenues in obtaining discovery from a Japanese national. *See* Soble & Tanabe, *supra.* Given the limited options available, Defendants almost certainly intend to seek letters rogatory. *Bakeer v. Nippon Cargo Airlines Co.*, 2011 WL 3625103 (E.D.N.Y. July 25, 2011) ("The only method for obtaining the testimony of an unwilling Japanese witness is through a letter rogatory by a Japanese court.").

The letters rogatory procedure, which would involve this Court issuing and transmitting a request for assistance from a Japanese court through diplomatic

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

11

Case Nos. 8:13-cv-01480 MRP (DFMx);
8:13-cv-01481 MRP (DFMx)

channels, is notoriously time-consuming. "The letters rogatory procedure has been described as 'complicated, dilatory, and expensive.'" *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007) (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 531 (1987)). "The execution of letters rogatory by Japanese courts can be time-consuming, taking six months to a year to execute in some cases." Soble and Tanabe, *supra*. Proceeding with the letters rogatory process could potentially double or even triple the duration of fact discovery in this case.

Furthermore, despite the enormous amount of time required, the letters rogatory procedure is unlikely to yield useful discovery for Defendants. Defendants state Sanyo possesses "crucial information." Def's Mem. at 8. They proceed to speculate that Sanyo has "critical documents," "documents and information related to the inventors' conception and reduction to practice," and "information and documents that are highly relevant to Defendants' invalidity and unenforceability defenses." *Id.* But letters rogatory cannot be used to compel production of documents. *See* Soble & Tanabe, *supra* at 2. Even if Sanyo did have "many critical documents," as Defendants hypothesize, it cannot be compelled to provide them to Defendants. Instead, all Defendants can do is submit a list of questions which a Japanese court will use to examine the witnesses. *See* Soble & Tanabe, *supra* at 2. Furthermore, the examination will concern events that occurred close to twenty years ago. While the inventors may remember some information about the patents-in-suit, it is highly unlikely they will be able to provide testimony about specific references that may or may not have been provided to the USPTO. Moreover, this information is readily available from the file histories of the patents-in-suit, which DCT has produced.

Moreover, Defendants' stated reasons for seeking discovery from Sanyo concern defenses that the Defendants never bothered to plead. Defendants state they seek discovery from Sanyo to "shed the light on the scope of the prior art that

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

12

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

existed during the time of the '008 Patent and why [the inventors] decided to systematically not disclose to the USPTO the existence of this prior art." Def's Mem. at 9. This is testimony relevant only to an inequitable conduct defense. But there is no such defense in this case. Inequitable conduct must be pled with particularity. *See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Not only did Defendants fail to plead inequitable conduct with particularity, Defendants' Answers contain no mention of an inequitable conduct claim whatsoever. *See* Nissan Dkt. 18, Hyundai Dkt. 26. Defendants should not be permitted to delay the resolution of this case to develop a defense they never pleaded.[4]

Given that it can take over a year to complete the apparently futile discovery Defendants seek, coupled with Defendants' failure to pursue this process during the fact discovery period, it appears Defendants' real motivation behind this *ex parte* application is delay. Defendants have previously expressed desire to have this litigation stayed pending the resolution of their petitions for *inter partes* review, but this Court deferred resolution of that issue. Defendants appear to seek further delay via this application, such that the Patent Office proceedings can catch up with this litigation and provide further support to Defendants for their motion to stay.

### IV. CONCLUSION

For the foregoing reasons, Defendants' *ex parte* application for leave to take discovery from third party Sanyo after fact discovery cut-off date should be denied.[5]

---

[4] Relatedly, Defendants did not assert all of the prior references of which they now suggest the inventors withheld in their Amended Final Election of Asserted Prior Art. On page five of their Memorandum, Defendants list a table of seven references. But only Japanese Publication Nos. 02-152491 and H8-45022 and U.S. Patent Nos. 5,864,452 and 5,626,963 are asserted in Defendants' Amended Final Election of Asserted Prior Art. Defendants cannot seriously contend obtaining discovery related to these references is critical to their defense if those references were not included in their Final Election of Asserted Prior Art.

[5] In addition to leave to conduct discovery from Sanyo, Defendants' *ex parte* application seeks to extend the due dates related to the invalidity and/or

Plaintiff's Opposition To Defendants' Ex Parte Application For Leave To Take Discovery From Third Party Sanyo Electric Co., Inc. After Fact-Discovery Cut-Off-Date
3568507v1/013643

13

Case Nos. 8:13-cv-01480 MRP (DFMx); 8:13-cv-01481 MRP (DFMx)

Dated February 25, 2015:

MARC M. SELTZER
KATHRYN P. HOEK
OLEG ELKHUNOVICH
JOSEPH S. GRINSTEIN
SUSMAN GODFREY L.L.P.

By: /s/ *Oleg Elkhunovich*
    Oleg Elkhunovich

Attorneys for Plaintiff Diamond Coating Technologies, Inc.

---

(… cont'd)
unenforceability of the patents-in-suit pending the discovery from Sanyo, including their expert reports currently due on March 16, 2015. In their Memorandum, Defendants provide no argument in support for what is effectively a bifurcation of infringement and validity issues. Such proposed bifurcation is inefficient and prejudicial to DCT. Should the Court decide to grant Defendants leave to take international discovery, the Court should extend deadlines for infringement and validity issues equally. The parties are in the same boat with respect to their inability to obtain discovery from foreign parties. Defendants have taken a position that most of the technical documents relating to infringement are not in their possession, but are with their non-U.S.-based suppliers. If Defendants are allowed extra time to pursue international discovery—and they should not be for the reasons set forth in this opposition—DCT requests it be similarly allowed time to pursue international discovery from Defendants' suppliers.