# United States Court of Appeals for the Federal Circuit

———————————

**DIAMOND COATING TECHNOLOGIES, LLC,**
*Plaintiff-Appellant*

**FEDERAL-MOGUL CORPORATION,**
*Third Party Defendant*

v.

**HYUNDAI MOTOR AMERICA, HYUNDAI MOTOR COMPANY, KIA MOTORS AMERICA, INC., KIA MOTORS COMPANY, NISSAN NORTH AMERICA, INC., NISSAN MOTOR CO. LTD.,**
*Defendants-Appellees*

———————————

2015-1844, 2015-1861

———————————

Appeals from the United States District Court for the Central District of California in Nos. 8:13-cv-01480-GHK-DFM, 8:13-cv-01481-GHK-DFM, Judge George H. King.

———————————

Decided: May 17, 2016

———————————

JOSEPH SAMUEL GRINSTEIN, Susman Godfrey LLP, Houston, TX, argued for plaintiff-appellant. Also represented by COLIN MICHAEL WATTERSON; OLEG ELKHUNOVICH, KATHRYN HOEK, MARC M. SELTZER, Los Angeles, CA.

REGINALD J. HILL, Jenner & Block LLP, Chicago, IL, argued for all defendants-appellees. Defendants-appellees Nissan North America, Inc., Nissan Motor Co. Ltd. also represented by PETER J. BRENNAN, CHAD J. RAY; ADAM G. UNIKOWSKY, Washington, DC.

DANIEL TALLITSCH, Baker & McKenzie LLP, Chicago, IL, for defendants-appellees Hyundai Motor America, Hyundai Motor Company, Kia Motors America, Inc., Kia Motors Company. Also represented by D. JAMES PAK, San Francisco, CA.

————————————

Before WALLACH, BRYSON, and TARANTO, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Diamond Coating Technologies, LLC ("Diamond") sued Appellees Hyundai Motor America, Hyundai Motor Company, Kia Motors America, Inc., Kia Motors Company, Nissan North America, Inc., and Nissan Motor Co. Ltd. (collectively, "Appellees") in the United States District Court for the Central District of California ("District Court") alleging infringement of U.S. Patent Nos. 6,066,399 and 6,354,008 (together, the "patents-in-suit"). The District Court dismissed the actions because it found that agreements between Diamond and Sanyo Electric Co., Ltd. ("Sanyo"), the original assignee of the patents-in-suit, did not confer patentee status on Diamond, allowing Diamond to sue Appellees without joining Sanyo. *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, Nos. 8:13-cv-01480-MRP, 8:13-cv-01481-MRP(DFM), 2015 WL 2088892, at *6 (C.D. Cal. Apr. 1, 2015). The District Court subsequently held that *nunc pro tunc* agreements executed by Diamond and Sanyo after its decision in *Diamond* did not affect its determination. J.A. 12 (order denying reconsideration).

Diamond appeals the District Court's dismissals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012).  For the reasons provided below, we affirm.

DISCUSSION

I. Standard of Review

Whether a party is a patentee able to sue another for patent infringement raises "a question of law that this court reviews de novo, applying Federal Circuit precedent." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010) (citation omitted).

II. Diamond Cannot Sue Alone Unless It Received All Substantial Rights in the Patents-in-Suit

"A *patentee* shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2012) (emphasis added).  A "'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d).  A party may become the successor-in-title to the patentee.  *Id.* § 261, ¶ 2 ("[P]atents, or any interest therein, shall be assignable in law by an instrument in writing.").

In 2011, Diamond and Sanyo signed the Patent Assignment and Transfer Agreement ("PATA") (J.A. 199–232) and the Ancillary Agreement (J.A. 246–56).[1]  When the patents-in-suit issued, the inventors assigned the

---

[1]   In their submissions, the parties designated the entire PATA and Ancillary Agreement as confidential.  However, during oral argument, Diamond agreed to waive any claim of confidentiality at the court's request.  *See* Oral Argument at 3:44–4:49, *available at* http://oralargum ents.cafc.uscourts.gov/default.aspx?fl=2015-1844.mp3.  Accordingly, we treat the terms of the PATA and Ancillary Agreement as public, including any such terms that accompany the parties' arguments in their briefs.

4                DIAMOND COATING TECHS., LLC V. HYUNDAI MOTOR AM.

patents to Sanyo.  J.A. 82, 141.  Sanyo then conveyed to Diamond various rights to and interests in the patents-in-suit via the PATA.  J.A. 199–232.

Diamond alleges the PATA provides Diamond with "legal title [to] the patents-in-suit," Appellant's Br. 14, such that it is the successor-in-title to the patents-in-suit, *see id.* at 16–17.  Because it is the successor-in-title to the patents-in-suit, Diamond continues, it meets the definition of "patentee" under 35 U.S.C. § 281.  *See id.*  And because it is a patentee under § 281, Diamond argues that it may sue Appellees without joining Sanyo.  *Id.*

Agreements transferring patent rights occur by assignment or license.  "An assignment of patent rights operates to transfer title to the patent, while a license leaves title in the patent owner" and transfers something less than full title and rights.  *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1116 (Fed. Cir. 1996) (citation omitted).  "To create an assignment, a contract must transfer:  (1) the entire exclusive patent right, (2) an undivided interest[2] in the patent rights, or (3) the entire exclusive right within any geographical region of the United States."  *Id.* at 1117 (citation omitted).  "An agreement that does not transfer one of these three interests is merely a license."  *Id.* (citation omitted).

We treat an agreement granting patent rights as a contract and interpret its terms consistent with the choice of law provision in the agreement in question.  *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604

---

2    "When . . . multiple inventors are listed on the face of the patent, each co-owner presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions."  *Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

F.3d 1354, 1359 (Fed. Cir. 2010). The PATA states that New York law governs the interpretation of its terms, J.A. 219, and under that law we review the District Court's interpretation of the PATA de novo, *Dreisinger v. Teglasi*, 13 N.Y.S.3d 432, 435 (App. Div. 2015).

In this case, Diamond asserts "patentee" status only as the alleged recipient of "the entire exclusive patent right" (not an undivided interest or a geographically limited entire exclusive right). On its face, "the entire exclusive patent right" must include all substantial rights in the patent. We have not allowed labels to control by treating bare formalities of "title" transfer as sufficient to determine that an "assignment" of the entire exclusive right has occurred. Rather, we have explained that, "[t]o determine whether a provision in an agreement constitutes an assignment or license, one must . . . examine the substance of what was granted." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991); *see Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000).

We therefore must ask whether Diamond received all substantial rights in the patents-in-suit or, instead, whether Sanyo retained substantial rights. Unless Diamond received all substantial rights in the patents-in-suit at the time it filed suit in the District Court, it was not a "patentee" (allegedly without a joint owner). If Diamond was not a patentee, it could not bring this suit by itself. And since Diamond did not take the opportunity provided by the District Court to join Sanyo, the District Court properly dismissed the suit. *See, e.g., Alfred E. Mann*, 604 F.3d at 1360.

### III. At the Time of Suit, Diamond Did Not Have All Substantial Rights in the Patents-in-Suit

The District Court held that the PATA did not convey all substantial rights in the patents-in-suit to Diamond.

*Diamond*, 2015 WL 2088892, at *5–6.  In particular, it held that the following terms of the PATA weighed against finding a transfer of substantial rights:  (1) Diamond could not assign the PATA to another party without Sanyo's consent; (2) Sanyo retains an economic interest in future proceeds, including any that arise from infringement litigation; (3) "Sanyo retains a license to make, use, and sell products covered by the patents-in-suit"; and (4) "Sanyo retains significant control over the decision to enforce the patents" because the PATA "condition[s] enforcement on consideration of the best interests of [Diamond] and Sanyo."  *Id.* at *5 (internal quotation marks and citation omitted).

Diamond challenges these findings.[3]  It argues that "[t]he PATA vests [Diamond] with the sole right to exclude others," Appellant's Br. 19; "[n]othing in the PATA divests [Diamond]'s sole right to sue," *id.* at 21; "[Diamond] could assign or sell the patents-in-suit," *id.* at 23; "Sanyo's economic interest did not deprive" Diamond of patentee status, *id.* at 30; "Sanyo's non-exclusive license did not affect" Diamond's patentee status, *id.* at 31; and "Sanyo did not control [Diamond]'s ability to enforce the patents-in-suit," *id.* at 33.  Thus, Diamond contends that the PATA transferred to it all substantial rights in the patents-in-suit.  *Id.* at 12.

We need not resolve all of Diamond's questions because two characteristics of the PATA resolve the issue before us.  We "have never . . . establish[ed] a complete

---

[3]    In its opening brief, Diamond states that various provisions in the PATA were *intended* to achieve a particular result, *see, e.g.*, Appellant's Br. 34, 37, but it cites no evidence to support its statements, *see id.*  Accordingly, we disregard them as speculative.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (speculation does not equate to evidence).

list of the rights" that "must be examined to determine whether a [patentee] has transferred away sufficient rights to render an[other party] . . . the owner of a patent." *Alfred E. Mann*, 604 F.3d at 1360. However, we have observed that (1) "the exclusive right to make, use, and sell . . . is *vitally important*," and (2) "the nature and scope of the [patentee's] retained right to sue accused infringers [and license the patent are] the most important factor[s] in determining whether an [agreement] . . . transfers sufficient rights to render the [other party] the owner of the patent." *Id.* at 1360–61 (emphasis added). We examine each of these issues in turn.

With respect to the first, Diamond does not possess sufficient rights to make, use, or sell the patented invention. We have held that a "licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights." *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (citation omitted). Sanyo retains a right and license to make, use, and sell products covered by the patents-in-suit. Section 2.4(a) of the PATA provides Sanyo with "a world-wide, royalty-free, non-exclusive, non-sublicensable, non-transferable . . . right and license . . . to practice the methods and to make, have made, use, distribute, lease, sell, offer for sale, import, export, develop and otherwise dispose of and exploit any" products covered by the patents-in-suit, including any "foundry[4] or contract manufacturing activities . . . that [Sanyo] . . . currently undertake[s] . . . or may undertake in the future." J.A. 204. Indeed, the PATA does not even grant Diamond a right to practice the

---

4   A "foundry" right is "a licensee's right[] to make a product and sell it under a third party's name." *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1071 (Fed. Cir. 2009).

patents-in-suit. Section 5.1.1 of the PATA limits Diamond to the "prosecution, maintenance, licensing, litigation, enforcement and exploitation" of the patents-in-suit and explains that Diamond "shall engage in no [other] business or activity." J.A. 208. Thus, in this respect, Diamond unquestionably failed to acquire all substantial rights in the patents-in-suit.

Diamond contends that the court should construe "exploitation" in Section 5.1.1 of the PATA to mean "practice" and "sell," such that the PATA provides Diamond with sufficient rights to make, use, and sell the patented invention. Appellant's Br. 24–26 (equating "exploitation" with "selling"); Oral Argument at 35:21–35:55 (equating "practice" with "exploitation"), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1844.mp3. "Practice" and "sell" appear in Section 2.4(a) of the PATA. J.A. 204. If the parties intended for Diamond to possess the rights to practice and sell the patents-in-suit, Section 2.4(a) indicates that they knew how to say so.[5] *See Dreisinger*, 13 N.Y.S.3d at 435 ("Our function is to apply the meaning intended by the parties, as derived from the language of the contract in question." (internal quotation marks and citations omitted)).

With respect to the second issue, "[r]etaining control of [licensing or litigation] activities is [] critical to demon-

_____

[5]    Among other words, "exploitation" follows "prosecution," "licensing," "litigation," and "enforcement" in Section 5.1.1 of the PATA, which indicates that "exploitation" concerns enforcement activities not explicitly addressed by the PATA. *See* J.A. 208; *see also Harris v. Allstate Ins. Co.*, 127 N.E.2d 816, 818 (N.Y. 1955) (applying the principle *noscitur a sociis*—that the meaning of a word should be derived from the words immediately surrounding it—to interpret a contract); *Noscitur a Sociis*, Black's Law Dictionary (10th ed. 2014).

strating that the patent has not been effectively assigned to the licensee." *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1343 (Fed. Cir. 2014) (citations omitted), *vacated on other grounds*, 135 S. Ct. 1846 (2015). Sanyo retained significant control over Diamond's enforcement and litigation activities. First, the PATA conditions Diamond's litigation and enforcement activities on Sanyo's best interests. Section 5.1.4 of the PATA states that Diamond, "in its *reasonable* sole discretion," "shall pursue the licensing, litigation, enforcement and other exploitation of the [patents-in-suit] to generate revenue for so long as [Diamond] determines in good faith, taking into consideration the *best interests* of [Diamond] *and* [Sanyo], that it is commercially reasonably to do so." J.A. 209 (emphases added). Second, the PATA cabins Diamond's authority to license the patents-in-suit. Section 5.2.2 of the PATA explains that Diamond "shall not" license the patents-in-suit jointly with patents owned by another party absent Sanyo's prior written consent. J.A. 210. Third, the PATA and Ancillary Agreement limit Diamond's discretion to refrain from suing certain companies. As the District Court observed, the agreements provide

> a list of companies which [Diamond] "reserves the right not to assert the [patents-in-suit] against." Sanyo "acknowledges and agrees" that [Diamond]'s decision not to seek enforcement against these companies "shall not form a basis for alleging that [Diamond] breached any obligation under the PATA." Furthermore, [Diamond] may not add companies to [the list] "in bad faith or in a manner that would reasonably be viewed as circumvention of the business objectives" of the [PATA].

*Diamond*, 2015 WL 2088892, at *6 (brackets and citations omitted). The District Court properly concluded that, "if [Diamond] had unfettered discretion on enforcement, then [the list] would be superfluous." *Id.* Section 5 and Ap-

Case 8:13-cv-01480-GHK-DFM   Document 166   Filed 05/17/16   Page 10 of 11   Page ID
#:4132

pendix 2 of the Ancillary Agreement also provide a list of "companies that Sanyo reasonably believes represent licensing opportunities" and restrict Diamond's ability to remove companies from that list. J.A. 249, 256. These provisions show that Sanyo retained significant control over Diamond's enforcement and litigation activities.

The PATA and the Ancillary Agreement therefore did not convey all of the substantial rights in the patents-in-suit to Diamond. Accordingly, we hold that Diamond is not a "patentee" under 35 U.S.C. § 281.

### IV. Precedent Bars Consideration of the *Nunc Pro Tunc* Agreements

Following the District Court's decision in *Diamond*, Diamond and Sanyo executed *nunc pro tunc* agreements,[6] purportedly "to clarify the parties' original intent; namely, to grant full ownership of the patents in question to [Diamond]." Appellant's Br. 12. Diamond asserts these *nunc pro tunc* agreements effectively establish Diamond's status as a patentee. *Id.* at 43. We conclude they do not.

In *Alps South, LLC v. Ohio Willow Wood Co.*, we held that "[n]unc pro tunc assignments are not sufficient to confer retroactive [patent status]." 787 F.3d 1379, 1384 (Fed. Cir. 2015) (citation omitted). Although Diamond contends that the *nunc pro tunc* agreements cure its patentee problems, Appellant's Br. 43–49, it concedes that "the panel should . . . affirm . . . based on *Alps South*" unless there is "intervening authority from an en banc panel of this Court or the Supreme Court," *id.* at 43. Because neither the en banc court nor the Supreme Court has overruled *Alps South*, we reject Diamond's argument. *See Deckers Corp. v. United States*, 752 F.3d 949, 965

---

[6]    The phrase "*nunc pro tunc*" means "[h]aving retroactive legal effect." *Nunc Pro Tunc*, Black's Law Dictionary (10th ed. 2014).

DIAMOND COATING TECHS., LLC v. HYUNDAI MOTOR AM.                    11

(Fed. Cir. 2014) (explaining that panels do not have the authority to overrule prior precedential panel decisions unless the en banc court or the Supreme Court overturns the prior decision).

CONCLUSION

We have considered Diamond's remaining arguments and find them unpersuasive. Accordingly, the decisions of the United States District Court for the Central District of California are

**AFFIRMED**